IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **SARAH THOMAS**, individually and as legal guardian of C. S., a minor child.<br>   Plaintiff,<br><br>vs.<br><br>**NEENAH JOINT SCHOOL DISTRICT,**<br>   Defendant. | Case No. 21-cv-366<br><br>Jury Trial Demanded |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## AND AWARD OF DAMAGES

### INTRODUCTION

1. This complaint arises from excessive and illegal use of force and physical abuse, including the excessive and punitive use of physical restraints, against a vulnerable child with autism and other disabilities, by staff employed by the Defendant school district.

### PARTIES

2. Plaintiff C.S. is a natural person and minor child residing in Winnebago County Wisconsin.

1

3. Plaintiff Sarah Thomas is a natural person as well as mother and legal guardian of C.S., residing in Winnebago County, Wisconsin.

4. Defendant Neenah School District is a Wisconsin local public school system operating within the city of Neenah in Winnebago County, Wisconsin. It operates 16 schools serving approximately 6,200 students in pre-kindergarten through 12th grade.

## JURISDICTION AND VENUE

5. This Court retains jurisdiction over the case and controversy as all parties reside or operate within Winnebago County, Wisconsin, within the bounds of the Eastern District of Wisconsin, and are subject to service therein.

6. Subject matter jurisdiction is proper under 28 U.S.C. §1331 (federal question jurisdiction), as this case arises under the United States Constitution and is a cause of action pursuant to 42 U.S.C. §1983 for the deprivation of civil rights under color of law.

7. Venue is proper in the Eastern District of Wisconsin as all parties reside or operate therein, and the factual allegations necessitating the filing of this Complaint occurred entirely, or nearly entirely, within the bounds of Winnebago County, Wisconsin, within the boundaries of the Eastern District of Wisconsin.

FACTUAL BACKGROUND

8. C.S. is currently thirteen years of age and is a student enrolled full-time with the Neenah School District.

9. During the 2019-2020 schoolyear, C.S. attended Horace Mann Middle School, a predominantly 6th grade school in Neenah, administered by the Neenah School District, located at 1021 Oak Street in the City of Neenah.

10. C.S. has multiple developmental or cognitive disabilities, including:

    a. Autism Spectrum Disorder, characterized by impaired social and educational functioning, impaired reciprocal communication skills, and impaired abstract reasoning ability;

    b. Attention Deficit Hyperactivity Disorder (ADHD), characterized by impairments to concentration, impaired self-regulation skills, impaired peer relationships, some academic impairment, but otherwise intact or neurotypical basic cognitive abilities; and

    c. Obsessive Compulsive Disorder (OCD), characterized by recurrent and persistent thoughts, urges, or images to an unwanted extent at times causing marked anxiety and distress.

11. All three of the above disorders carry substantial impact on C.S.'s daily life activities and are recognized as disabilities.

12. All three of the above disorders and the respective impacts were fully or substantially known to staff at Horace Mann prior to February 2020.

13. Due to her disabilities and an associated Individualized Education Plan (IEP), C.S. was frequently directly taught or supervised by a Neenah Special Education Teacher, Jason Fridley, rather than regular education teachers.

FEBRUARY 13, 2020, INCIDENT

14. On February 13, 2020, C.S. was attending and under the custodial care of Horace Mann Middle School staff during the course of a normal school day.

15. During that school day, between classes C.S. was confronted by her Special Education teacher Fridley while she was attempting to use the elevator in a second-floor hallway at Horace Mann.

16. After confronting her, Fridley aggressively pushed C.S. into a wall and held her there against her will after she did not immediately respond in the way he desired.

17. Fridley's action caused significant physical pain to C.S., as well as mental panic and distress due to C.S. lacking the ability to understand why she was being pushed and restrained and Fridley being a person she trusted as an authority figure.

18. After holding C.S. against the wall for several minutes while C.S. screamed and pleaded to be let go, Fridley either directed or summoned an additional staffer or

4

administrator to call in the Neenah Police Department to further restrain or punish C.S. for unknown reasons.

19. During this time, C.S. struggled physically to attempt to free herself from the painful restraint, in addition to verbal and emotional pleas.

20. Fridley reacted to this struggling by escalating his physical hold on C.S., rather than allowing her to de-escalate or be freed from the acute pain and panic she was experiencing.

21. The responding Neenah Police Officers were given false or misleading information by Neenah Public Schools staff alleging that C.S. was an aggressor and needed to be immediately or aggressively apprehended and taken into custody to protect Mr. Fridley and/or other parties.

22. Based on these allegations from Neenah staff, the first Neenah Police Officer to arrive rushed to the position of C.S. and Mr. Fridley and immediately grabbed C.S. and threw her onto the floor.

23. The officer then physically pinned C.S. to the floor for several minutes while Fridley and other Neenah staff watched.

24. While watching, Fridley and other Neenah staff did not attempt to calm or console C.S., to inform the officer accurately as to what was happening, or otherwise mitigate the ongoing pain and distress C.S. was experiencing, instead choosing to

watch and at times smile and laugh as C.S. remained forcibly pinned to the ground crying, unable to comprehend what was being done to her or why.

25. The police officer was joined by at least two backup officers who were present for the same reasons and based on the same or substantially similar misinformation from Neenah Public Schools staff.

26. The initial responding officer then placed C.S. in handcuffs, and with the help of the other two officers, C.S. was then placed into a wheelchair provided by Horace Mann staff.

27. C.S. was then bound to the chair by her legs while remaining handcuffed behind her back with her arms stretched behind the chairback.

28. C.S. remained bound until her mother, Plaintiff Thomas arrived and had spoken to police.

29. C.S. was not released from being forcibly pinned and/or bound for a total of 34 minutes.

30. Despite Fridley's efforts, C.S. was not charged with a crime or placed under arrest formally, and instead was taken home by her mother without further intervention.

31. Following concerns and complaints from Thomas, Neenah Public Schools took no known action to either correct, train, or discipline Fridley or other staff for their actions and inactions concerning their prolonged use of excessive force as punishment.

32. Likewise, Neenah failed to report the incident as required in its regular reporting of seclusion and restraint usage to the Wisconsin Department of Public Instruction, and has subsequently referred to it with euphemisms such as "the police have been contacted to help support [C.S.].

33. While Neenah has attempted to minimize disclosure or mitigation since the incident, it has continued to have significant impact on the well-being of C.S., leading to trauma that caused escalated incidents at school and home thereafter.

FEBRUARY 25, 2020, INCIDENT

34. On February 25, 2020, C.S. had been experiencing bullying behavior from one or more other students at Horace Mann and may have fought back against a student by briefly scratching or grabbing him in a hallway.

35. C.S. had been experiencing bullying before, but it was consistently disregarded by Horace Mann staff.

36. As a result of the minor incident with another child, C.S. was made to have her lunch confined in the school office as a punishment.

37. At some point during this lunch period, C.S. began to deal with severely escalated anxiety that appeared elevated when she was confined in the presence of Fridley and some of the same Neenah staff from the February 18 incident.

7

38. The situation escalated to where C.S. became dysregulated and staff such as Fridley responded with similar aggressive force to February 18. The traumatic effect of this was so great that even after Plaintiff Thomas arrived, C.S. continued to be panicked and dysregulated for as much as an hour total.

39. Neenah staff again called in the Neenah police department to restrain C.S., but this time with the further step of seeking juvenile delinquency prosecution of C.S. through the Winnebago County Circuit Court.

40. Neenah staff participated in initiating this prosecution despite having actual knowledge that C.S. was not in a position to exercise understanding or control of her actions during the dysregulation incident.

41. Juvenile prosecution was initiated by the Winnebago County District Attorneys Office as a direct result of the events initiated by Neenah staff.

42. The prosecution was not dropped until approximately six months later when C.S. was found not to be competent to stand trial.

43. This incident and the resulting prosecution caused additional trauma to C.S. and her mother Plaintiff Thomas, and resulted in significant financial losses to Thomas through legal fees required to defend her daughter.

ONGOING THREATS AND IMPACTS

44. This incident and at least one further one in March 2020 also resulted in Neenah staff issuing suspensions, which after the March incident became of indeterminate length.

45. Following these incidents, Thomas has been subject to the ongoing threat of the use of restraint and law enforcement force and prosecution on any given school day, being required to be able to arrive at school and succeed in calming any behavioral issue and/or taking her daughter home within as little as 10 minutes to protect C.S. from these threats.

46. As a result of the ongoing trauma, C.S. has suffered deterioration of both mental and physical health, showing tangible symptoms such as excessive weight changes.

CAUSE OF ACTION AND PRAYER FOR RELIEF

47. Through its use of excessive and unlawful force and retaliation against C.S. for manifestations of her disability, Defendant's staff have violated Plaintiff's constitutional rights while acting under color of state law, in violation of 42 U.S.C. §1983.

48. Plaintiff's daughter has a right to the security of her person under the 4th Amendment to the Constitution of the United States, as well as Equal Protection of its laws under the 14th Amendment.

49. At all times detailed above, Neenah staff were acting within their courses of employment and with implicit or explicit authorization, as they performed duties and exercised authority of care and custody allowed and mandated by Wisconsin state law.

50. At all times detailed above, the actions and omissions of Neenah staff reflect a practice or protocol of utilizing excessive punitive and retaliatory force or threats of force to punish students with behavioral disabilities, rather than engage in constructive use of supports or services.

51. Plaintiff therefore requests this Court grant the following relief:

    a. Issue a permanent injunctive to enjoin Neenah School District staff from engaging in any further unlawful physical restraint or assaults against C.S. while she is in their care or custody as a student.

    b. Grant Plaintiff a judgment for monetary damages in an amount to be determined by the Court, based upon:

        i. Mental injuries and emotional trauma to both Plaintiff and her minor daughter,

        ii. Loss of income due to the resulting limitations on Thomas's ability to be regularly employed during the school day,

        iii. Costs of legal services and any additional medical provided expenses, and

iv. Any other damages subsequently ascertained or found appropriate by the Court.

c. Grant Plaintiff a judgment for attorney's fees and costs required for the filing and prosecution of this case; and

d. Grant whatever additional relief the Court deems just and proper.

52. Plaintiff reserves the right to supplement or amend this pleading as appropriate to conform to additional or subsequently discovered information.

Respectfully submitted,

  s/ Brady R. Henderson
Brady R. Henderson, Wis. Bar #1116435, Okla. Bar #21212
Cream City Law, LLC
5150 N. Port Washington Rd.
Milwaukee, WI 53217
(414) 563-7453
brady@creamcity.law